IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DANIEL OTIS DONNELL,                    :
                                        :
              Plaintiff,                :
                                        :
        v.                              :      CIVIL ACTION NO.
                                        :      1:03-CV-0824-JOF
SHERIFF PHIL D. MILLER, et al.,         :
                                        :
              Defendants.               :

## OPINION AND ORDER

This matter is before the court on Defendants' motion for summary judgment [49].

I.      **Statement of the Case**

        A.      **Procedural History**

        On March 23, 2003, Plaintiff, Daniel Otis Donnell, filed this action against

Defendants, Sheriff Phil D. Miller, Chief Deputy Stan Copeland, Captain Bob McClendon,

Major Tommy Wheeler, Dr. Desai, and Rita Rainwater, Chairman of the Douglas County

Board of Commissioners, alleging civil rights violations.   On October 11, 2005, Defendants

filed a motion for summary judgment.   Plaintiff filed a motion for extension of time to

respond to Defendants' motion for summary judgment on October 31, 2005, contending that

he had not received Defendants' motion for summary judgment until October 19 and that the

mail had been opened.   The court, in a November 16, 2005 minute order, granted Plaintiff's

motion for extension of time.   On January 27, 2006, the court, having not received any response to Defendants' motion for summary judgment, gave Plaintiff an additional twenty days to respond Defendants' motion for summary judgment.   Plaintiff filed a response to the motion on February 16, 2006.

**B.    Facts**

One of Plaintiff's claims in this action concerns the medical care he has received.   On May 27, 2002, Plaintiff was arrested and incarcerated in the Douglas County Jail.   On August 21, 2002, at approximately 8:00 p.m., Plaintiff fell from his bunk and injured his face.   Jail staff telephoned a jail nurse at home and told her about Plaintiff's condition.   Without coming to the jail, Nurse Harrington instructed the jail personnel to give plaintiff an ice pack, an eye patch, and some pain medication.   Jail personnel checked on the Plaintiff throughout the night.

The next morning Plaintiff was scheduled to be in court.   The officer who had come to transport Plaintiff to court saw his condition and took him to the jail's doctor, Defendant Desai.   Defendant Desai examined the Plaintiff and noted swelling and blood in the eye. Defendant Desai prescribed an eyepatch and pain medication.   Apparently, Dr. Desai informed Plaintiff that if he was not better in a couple of weeks, Plaintiff should fill out another medical request.   That same day Plaintiff filed a grievance complaining that he had not been taken to the hospital for treatment of his injury.   On August 23, Plaintiff submitted a request for medical care complaining that "my cheek bone is broke my eye bleeds I have periodically nose bleeds, my teeth and gums are numb one side of my face tingles all the time, I have bad

2

headaches and theirs (sic) a lot of pressure on one side of my face." The medical staff initially prescribed Motrin, but substituted Tylenol when Plaintiff would not take the Motrin. At some point Plaintiff refused the Tylenol because it was not helping with the pain.

On August 26, Plaintiff submitted another request for medical care. In it he stated, "I don't need to see the Doctor about my eye again. That wasn't the problem to begin with I need x-rays on my cheek bone its broke. My face is numb on oneside. I can't put pressure on my jaws. I'm haven (sic) bad headaches. Behind and below my eye hurts." Plaintiff also filed a second grievance concerning Dr. Desai's treatment of his injury. Plaintiff met with Dr. Desai the next day, and Dr. Desai ordered x-rays of Plaintiff's face. Two hours later, Plaintiff was transported to the hospital for x-rays. The x-rays showed that Plaintiff had a fracture of the left zygomatic maxillary complex. On August 28, Plaintiff was seen by Dr. Franklin, an ear, nose and throat specialist. Dr. Franklin continued the pain medication and placed Plaintiff on a soft diet. Further, he ordered a CT scan of Plaintiff's face. The next day Plaintiff submitted another request for medical treatment complaining that he needed something done about his cheekbone. On August 30, Plaintiff was transported to the hospital for a CT scan. On August 30, Sgt. Hensley answered Plaintiff's first grievance.

On September 4, Plaintiff filed a grievance stating, "my headaches are worse I'm hurting around my temple, and blurred vision in left eye . . . need to see Doctor thier (sic) is a knote (sic) on my left temple." The same day Plaintiff was seen by Dr. Franklin, who reviewed the results of the CT scan and determined that Plaintiff would need surgery for the

3

fractures.   Plaintiff was given pain medication.   This medication was discontinued two days later, on September 6, in anticipation of his surgery.   Outpatient surgery was performed on Plaintiff's fractures on September 9.   After the surgery Plaintiff was placed in cell 257.   The following day he was transported to the medical wing.   Plaintiff refused Motrin because it gave him stomach problems.   He refused Tylenol because he felt that it was not helping.   Later he refused Vicodin because he had been told that if he took the medication, he would be placed back in cell 257.   On September 18, Plaintiff met with Dr. Franklin and then submitted a medical request because he was having complications with his eye.   Dr. Franklin prescribed a Medrol Dosepak to help with Plaintiff's post-surgical swelling.   Plaintiff refused the Dosepak because it made him feel "sick to his stomach."   He submitted a medical request again on October 8 because of problems with swelling.   Nurse Harrington noted that Plaintiff had refused the Medrol Dosepak.   The next day Plaintiff was examined by Dr. Blatts, an ophthalmologist, who prescribed an eye patch and liquid tears.

Another of Plaintiff's claims in this action deals with interference with his legal mail. Plaintiff's mail was opened on two different occasions outside of his presence.   Apparently, this action was done by Officer Gore and Officer Lyntz.   Both of the letters in question were from the United States District Court.   The letters were passed to Plaintiff by Officer Grant.

4

Officer Grant said that she would be a witness.  Plaintiff took some action to bring this grievance to the attention of the jail personnel.[1]

Douglas County Jail has an inmate grievance procedure.  This procedure allows inmates to file a formal grievance whenever the inmate feels that it is necessary.  Jail staff usually address such grievances within thirty days of filing.  If an inmate feels that the decision of the staff member who addresses the grievance is unjust, the inmate may appeal the decision to the Jail Administrator or the Chief Deputy.  Grievances arising out of medical care may be filed directly with either the Jail Administrator or the Chief Deputy.  In either situation, if the inmate is not satisfied with the decision of the Jail Administrator or the Chief Deputy, he may then file a final appeal to the Sheriff.

---

[1] The court is unable to discern what action Plaintiff took.  In his response to the Defendants' motion for summary judgment, he does not state that he filed a grievance but merely states, "Officer Clay and Plaintiff did appeal the grievance and got no response."  In his response statement of material facts Plaintiff states that he "never got a response to his appeal so plaintiff filed a amended complaint with the court concerning his legal mail."

5

### C.    Contentions

Plaintiff contends that jail officials were deliberately indifferent to his serious medical needs.  He claims that he did not receive proper medical treatment and that this failure constituted a violation of his constitutional rights.  Further, Plaintiff claims that his legal mail was opened outside of his presence, which action also constituted a violation of his constitutional rights.

Defendants claim that Plaintiff does not have subject matter jurisdiction to bring a § 1983 claim as Plaintiff has failed to exhaust the administrative remedies provided by the Douglas County Jail.  Further, Defendants contend that they are entitled to summary judgment as Plaintiff has failed to make any argument that Defendants Rainwater, Wheeler, Copeland, McClendon, or Miller personally participated in his treatment or that any of the Defendants including Defendant Desai, participated in the handling of his legal mail, and they are not liable under a theory of respondeat superior.  Finally, Defendant Desai contends that he is entitled to summary judgment as he was not deliberately indifferent to a serious medical need.

## II.    Discussion

### A.    Exhaustion of Administrative Remedies

Title 42 U.S.C. § 1997e(a) provides that a prisoner may not bring an action under § 1983 "until such administrative remedies as are available are exhausted."  The Eleventh Circuit has held that courts no longer have discretion to waive the exhaustion requirement.

6

*Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998).  The court's inability to waive the requirement applies even when the administrative remedies are deemed futile or inadequate.  *Id.* at 1326.  Unlike a judicially-created exhaustion requirement, which courts may waive in their discretion, the Eleventh Circuit has held that the exhaustion requirement in § 1997e(a) constitutes a "pre-condition to suit," thereby making the requirement jurisdictional in nature.  *Id.* (citing *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975), which holds that where exhaustion is a statutorily-specified jurisdictional prerequisite, "the requirement . . . may not be dispensed with merely by a judicial conclusion of futility").  The Eleventh Circuit reinforced this decision in *Leal v. Georgia Department of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001).  In that decision, the court reaffirmed the view that § 1997e(a)'s exhaustion requirement means simply that until a prisoner has exhausted all available administrative remedies, he "is precluded from filing suit in federal court." *Id.* at 1279.

In *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir 2000), the Eleventh Circuit stated, "'[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value.'" (Citing *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985)).  Further, "one who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir.1978); *see also* Fed. R. Civ. P. 56(e).

7

Here, Plaintiff has failed to provide the court with any specific facts showing that he exhausted the administrative remedies provided by the Douglas County Jail. Plaintiff's only assertion supporting the claim that he has satisfied the exhaustion requirement found in § 1997e(a) was made in his affidavit wherein he states that the "grievances that I filed the Sheriff Phil Miller new (sic) of this because of one of the grievances I filed he D.D. [?] responded and when I appealed I never got the response." Pltf. Aff. at 5. Plaintiff contends that the grievance system of the jail is improper because inmates do not get any copies or receipts to substantiate proof of filing. As Plaintiff has given no specific facts concerning the appeal, the court is unable to find that he adequately exhausted the administrative remedies. *Id*. He has not stated which grievance he appealed, when he appealed, or to whom he appealed it. Thus, the court cannot find that Plaintiff has met his burden to show that this court has subject matter jurisdiction over the current action. Therefore, the court GRANTS Defendants' motion for summary judgment.

**B.    Medical and Legal Mail Claims**

Assuming *arguendo* that this court has subject matter jurisdiction over the case, the court finds that Defendants are nonetheless entitled to summery judgment. Plaintiff alleges that "all defendants were very much aware of my medical condition and situation from phone calls made by my family to the jail[,] the letters sent to the captain, my verbal complaints on a daily basis[,] the medical requests[,] and grievances that I filed." Pltf. Aff. at 5. At no point does Plaintiff set forth any specific facts supporting this allegation with regard to Defendants

8

Rainwater, Wheeler, and Copeland.   Such conclusory allegations are insufficient to show subjective knowledge of a serious medical need.   Further, during Plaintiff's deposition he was unable to specify with whom members of his family allegedly spoke when they came to the jail to discuss Plaintiff's medical condition with jail officials.   Throughout his extensive journal in which he cataloged his treatment, Plaintiff never mentions having spoken with any of these Defendants regarding his medical condition.   During his deposition, Plaintiff admitted that his journal contained entries for all the people to whom he spoke concerning his injury and that if he had spoken with someone, the conversation would have been noted in the diary.   Pltf. Depo. at 43.   Plaintiff has failed to show that Defendants Rainwater, Wheeler, and Copeland participated in any way in his treatment for his injury.   Further, there is no evidence that any of these Defendants knew of or participated in the handling of Plaintiff's mail.

With regard to Defendant McClendon, Plaintiff states that he spoke with him prior to his surgery.   Pltf. Depo. at 51-52.   He also states that his family sent letters to this defendant. What Plaintiff fails to indicate in any way is what he and his family members   allegedly told Defendant McClendon in this conversation and these letters.   Thus, there is no allegation that Defendant McClendon knew the nature of his injury.   Moreover, Plaintiff's diary never mentions that he spoke with Defendant McClendon, and there is no evidence that Defendant McClendon knew or participated in the handling of Plaintiff's mail.   Thus, Plaintiff has failed to show that Defendant McClendon participated in his medical treatment or the handling of his legal mail.

9

Finally, with regard to Defendant Miller, Plaintiff specifically states, "Sheriff Phil Miller new (sic) of this because of one of the grievances he responded to." Plaintiff does not provide any information supporting this contention. The only response to Plaintiff's grievance came from Sgt. Hensley, who is not a party to this suit. Plaintiff has provided no specific information concerning Defendant Miller's knowledge of his serious medical need. Defendant Miller is not mentioned in his diary. Further, Plaintiff admits that he never spoke with Defendant Miller. Pltf. Depo. at 42. Therefore, the court finds Plaintiff has not alleged sufficient facts to show that Defendant Miller was involved in any action taken with regard to Plaintiff either in his medical treatment or the handling of his legal mail.

As none of these defendants participated in Plaintiff's medical treatment or the handling of his mail, the only avenue by which they may be liable is in a supervisory capacity. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003) (citing *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation marks and citation omitted); *Gonzalez v. Reno,* 325 F.3d at1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability)). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone*, 326 F.3d

10

at 1360 (citing *Gonzalez*, 325 F.3d at 1234; *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990)).   This causal connection is established "'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'"   *Cottone*, 326 F.3d at 1360 (quoting *Gonzalez*, 325 F.3d at 1234 (internal citations and quotations omitted)).   "Alternatively, the causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"   *Cottone*, 326 F.3d at 1360 (quoting *Gonzalez*, 325 F.3d at 1234 (internal citations and quotations omitted)).   "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."   *Gonzalez*, 325 F.3d at 1234.

Plaintiff has failed to make any argument that Defendants Rainwater, Wheeler, Copeland, McClendon, or Miller personally participated in his treatment or that any of the Defendants, including Defendant Desai, participated in the handling of his legal mail.   These Defendants could only be liable in their supervisory capacity.   Plaintiff has failed to show a causal connection between any of these Defendants and the alleged constitutional violation or a custom or policy which resulted in deliberate indifference to constitutional rights. Therefore, Plaintiff has failed to show facts under which any of these Defendants would be liable.   Accordingly, Defendants would be entitled to summary judgment on all the claims

11

relating to his legal mail and all of the claims, save the claim against Defendant Desai, for deliberate indifference to a serious medical need.

Under the law and the portions of the record cited above, the only Defendant against whom a claim could remain would be Defendant Desai, who was directly and personally involved in treatment of Plaintiff's injury.   In order to prove a claim for deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and subjective test.   *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003).   First, a plaintiff must demonstrate the existence of an objectively serious medical need.   *Id.*   Second, a plaintiff must prove that a jail official acted with an attitude of deliberate indifference to that medical need.   *Id.*   A showing of deliberate indifference has three components:   (1) subjective knowledge on the part of the jail official that there is a risk of serious harm; (2) disregard of that risk; and (3) doing so by conduct that is more than mere negligence.   *Id.* at 1245.   An official can act with deliberate indifference, and not simply negligence, when he fails or refuses to obtain medical treatment for an inmate.   *Id.* at 1246.   A delay in the provision of medical treatment can also constitute deliberate indifference when, for example, a defendant delays provision of treatment for non-medical reasons.   *Id.*

When an inmate has received medical care, courts are reluctant to find deliberate indifference.   *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989).   Nevertheless, this reluctance does not mean that a physician's treatment cannot manifest deliberate indifference to an inmate's medical needs.   The Eleventh Circuit has noted that while it was generally

12

hesitant to find an Eighth Amendment violation when an inmate had received medical care, it would have no hesitation in finding that "grossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference." *Id.*

An Eleventh Circuit case that is especially instructive for the case before this court is *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999). To understand the principles set forth in *McElligott*, the facts presented therein need to be set forth in some detail. In *McElligott*, the Eleventh Circuit addressed the issue of whether the care received by an inmate was so inadequate that defendants violated his rights under the Eight Amendment. In *McElligott*, upon entry into the prison system, the prisoner, Thomas Elmore, informed the head nurse that he had been experiencing burning abdominal pains for approximately five months. *Id.* Over a period of six months, Mr. Elmore submitted various complaints to the prison's head nurse and the prison's part-time doctor, Dr. Foley.

The *McElligot* court overturned a district court's grant of summary judgment and found that there was sufficient evidence from which a jury could conclude that Dr. Foley had requisite subjective knowledge of a substantial harm. The court found that whether the care received by an inmate was so inadequate that defendants violated the inmate's Eight Amendment rights was a close question. Despite all of the evidence before the court, the Eleventh Circuit agreed with the district court that Dr. Foley and Nurse Wagner could not be held liable for failing to diagnose the prisoner's colon cancer. The court noted that while this failure to diagnose could be deemed extremely negligent, it did not cross the line into

13

deliberate indifference.   Nevertheless, the Eleventh Circuit concluded that there was sufficient evidence to permit a jury to conclude that the defendant doctor and nurse were deliberately indifferent to the prisoner's medical need for further diagnosis of and treatment for the severe pain he was experiencing.  It stated:

> Despite Elmore's condition, a jury could conclude that, rather than try to diagnose and treat Elmore's worsening condition, the defendants knowingly took an "easier but less efficacious course of treatment," *Waldrop*, 871 F.2d at 1035, reflecting their deliberate indifference to the pain and suffering he was experiencing.   Even the care they did provide often came after significant delays.  For example, Elmore often had to wait in great pain in order even to be seen by Dr. Foley.  A jury could find that these delays evidence the defendants' deliberate indifference.   Finally, a jury could also find deliberate indifference in defendants' failure to do anything to alleviate Elmore's pain or even monitor his condition from February 5-February 10, 1997, when Dr. Foley finally decided to order much-needed and long-overdue testing for Elmore.

*Id.* at 1258.

In the case now before this court, the only defendant that Plaintiff has sufficiently alleged knew of Plaintiff's serious medical need was Defendant Desai.   While Defendant Desai knew about Plaintiff's serious medical need, the court finds that his actions did not constitute deliberate indifference.   Defendant Desai did not ignore Plaintiff's medical condition.   According to Plaintiff's diary, he only met with Defendant Desai on two occasions, once the day after his injury and again on August 27.   Both times that Defendant Desai met with the Plaintiff, he took some action to correct Plaintiff's condition.   The first time he met with Plaintiff he prescribed pain medication and an eye patch.   The next time that he met with Defendant Desai, he ordered that Plaintiff be taken to the hospital for x-rays.   Thus, Plaintiff's

contention of deliberate indifference against Defendant Desai can only be premised on the fact that he did not receive proper treatment for his injury.

As stated in *McElligot,* when a inmate receives medical treatment courts are hesitant to find deliberate indifference.   Courts will only find such indifference when Defendant's action is "grossly incompetent medical care or choice of an easier but less efficacious course of treatment."   Considering the finding in *McElligot,* the court is unable to find any evidence that Defendant Desai's treatment of Plaintiff was either "grossly incompetent medical care" or an "easier but less efficacious course of treatment."

With regard to Plaintiff's pain, Defendant Desai prescribed pain medication both times that he met with Plaintiff.   Further, unlike the plaintiff in *McElligot*, Plaintiff was not required to wait long periods of time without any treatment for the pain.   Rather, the only times that Plaintiff was without pain medication was a short time in anticipation of surgery and when he refused treatment because he did not like the side effects of the medication.   For all of the foregoing reasons, even if Plaintiff had exhausted the jail's administrative remedies, Defendant Desai would be entitled to summary judgment on Plaintiff's deliberate indifference claim.

## III.   Conclusion

The court GRANTS Defendants' motion for summary judgment [49].   The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint.

15

**IT IS SO ORDERED** this 17th day of March 2006.


                                   s/ J. Owen Forrester
                                     J. OWEN FORRESTER
                    SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)